Edward E. Richards, Sr., and Ruth H. Richards v. Commissioner.
Richards v. Commissioner
Docket No. 64348.
United States Tax Court
T.C. Memo 1959-64; 1959 Tax Ct. Memo LEXIS 186; 18 T.C.M. (CCH) 332; T.C.M. (RIA) 59064; March 31, 1959
*186 Edward E. Richards, Sr., pro se, Box 204, Columbus, Miss. Harold G. Clark, Jr., Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: The respondent has determined a deficiency in income tax for the year 1953 in the amount of $290, which deficiency arises from the disallowance of a loss deduction claimed by reason of certain shares of stock becoming worthless in 1953. Findings of Fact Petitioners filed a joint income tax return for the year 1953 with the director of internal revenue, Indianapolis, Indiana. The taxpayer, Edward E. Richards, Sr., is hereinafter referred to as the petitioner. Petitioner was vice president and general manager of the Terre Haute Cooperage, Inc., from its inception until October 22, 1954. Petitioner purchased a total of 196 shares of stock in Terre Haute Cooperage, Inc., in 1945 and later years, the last purchase being made in approximately 1950 for $100 a share, making the total paid by petitioner for the stock $19,600. Merchants Distilling Corporation was the largest stockholder, having 54.8 per cent of the outstanding stock. The petitioner owned approximately 4 per cent of the stock. *187 Petitioner organized and set up the business operations of Terre Haute Cooperage, Inc. It was engaged in the manufacture of wooden whiskey barrels. Petitioner had general supervision and responsibility for operating Terre Haute Cooperage, Inc., as long as it operated. Petitioner had the duty of obtaining raw materials for the plant. Terre Haute Cooperage, Inc., had a $500,000 capital stock account during 1953 and 1954. Terre Haute Cooperage, Inc., had an earned surplus account on June 30, 1952, which reflected a net deficit of $52,555.44 and which reduced the book value of the capital stock to $447,444.56 as of that date. Terre Haute Cooperage, Inc., had an earned surplus account which reflected a net dencit of $304,143.73, resulting in net capital of $195,856.27 as of June 30, 1953. Terre Haute Cooperage, Inc., had an earned surplus account which reflected a net deficit of $468,167.95, which resulted in net capital of $31,832.05 as of October 31, 1953. Terre Haute Cooperage, Inc., had an earned surplus account which reflected a net deficit of $512,227.74, which resulted in a net capital deficit of $12,227.74 as of November 30, 1953. Terre Haute Cooperage, Inc., had *188 an earned surplus account which reflected a net deficit of $544,423.31, which resulted in a net capital deficit of $44,423.31 as of December 31, 1953. The assets of Terre Haute Cooperage, Inc., totaled $777,874.08, and the liabilities totaled $822,297.39 as of December 31, 1953. Terre Haute Cooperage, Inc., continued to operate until October 22, 1954. It was adjudged bankrupt in late 1954. Sales and purchases were made by the cooperage company subsequent to December 31, 1953. The assets were insufficient to pay the preferred and general claims in full and after partial payment of claims there were no moneys available for distribution to any of the stockholders. Efforts were being made on behalf of Merchants Distilling Corporation to sell Terre Haute Cooperage, Inc., as a tax loss corporation. The stock of Terre Haute Cooperage, Inc., became worthless during the year 1953. Opinion The rule is well established that a loss arising out of an investment in stock is deductible in the year in which the loss was sustained. , . *189 The stock's worthlessness may be dependent not only on its current liquidation value but on what value it may acquire in the foreseeable future by the operations of the corporation. The Commissioner has emphasized the fact that the operations of the cooperage company extended into 1954 and it was not until in October of that year that the company went into bankruptcy. But the petitioner, who was the manager of the cooperage company and was familiar with its activities and its future, testified unequivocally that the stock was worthless at the end of 1953, and no other testimony as to value was offered by either party. The mounting losses which had resulted in a net deficit of over $52,000 by June 1952 had, by June 1953, increased to over $304,000. By the end of the year 1953, operating deficits had completely wiped out all the capital of $500,000 and there was left a deficit in capital of over $44,000. These events were sufficient in our opinion to establish that the stock was worthless in 1953 and that a deductible loss had been suffered. Events in 1954 served only to further substantiate the claimed loss. Petitioner never received or realized a penny out of his investment. The *190 loss is allowed as claimed. Decision will be entered for the petitioners.